Mr. Carpenter. May it please the Court, Kenneth Carpenter appearing on behalf of AY. Following up on the preceding argument, and I don't think that I want to try to plow new ground here, but I would like to focus the Court's attention on the regulation itself. Because it seems to me that the regulation itself here is what makes the error clearly mistaken that was made by both the Board and the Veterans Court in this case by relying upon evidence that was not pertinent to the question of whether or not the corroborative evidence that was submitted was competent. So what piece of evidence were they relying on in that statement you just made? They were relying on the absence of evidence because there was no evidence of the occurrence of the assault in AY's case. In AY's case, she had two statements in July of 2005 that once again were retrospective, if you will, for contemporaneous confining by AY at the time of the incident. The first statement was by her first husband, who reported that he had been informed that she had been raped shortly after the two met while serving in the military in 1980. The second statement was from a fellow service member who was stationed with AY at the time of her alleged sexual assault and reported that AY had confided in her after she had been drugged and raped. These two corroborative statements are expressly what is contemplated by the provisions of 38 CFR 304F5, and that is corroboration by means of sources other than service records. Well, that is certainly true that the regulation allows other kinds of corroborative evidence. What seems to me to be a bit difficult is to read the regulation as addressing the question that we've been talking about today. In other words, it seems to be difficult to read the regulation as foreclosing reliance on the absence of records. It seems to be silent about that question. Well, it is silent in regards to that question. It's not exactly silent. The regulation says it can be based on evidence from sources other than the veteran's service records. That would certainly suggest that the veteran's service records are pertinent to the pursuit of the truth. I disagree, Your Honor. I don't believe that that is the logical suggestion. They have to be pertinent. If there were a rape disclosed in the service records, that would clearly be pertinent. That would clearly be pertinent. But as this Court has correctly observed, this question is about corroboration. The whole issue in the only disability in the VA system which requires corroboration is post-traumatic stress disorder. Now we're talking about a subclass within persons suffering from post-traumatic stress disorder who are victims of in-service sexual assault. Those individuals are permitted by this regulation to rely on sources other than the service records. What that does, in my view, is to nullify the absence of a record in service. If there is no record of this incident in service, which is the undisputed fact in this case, then you may go outside of the service records to gain corroborative testimony, and two of those sources are family members and fellow service members. That's precisely what was in this case. And the error in this case by both the Board and the Veterans Court was not to have examined those statements. What they did was to use the veterans' statement to undermine the statement of the corroborators, when in fact the only pertinent issue under this regulation was whether or not the event, the sexual assault, did or did not happen. Corroborating evidence can be undermined if it turns out that what they're corroborating wasn't true, correct? Yes, but the proof of it didn't happen can't be used by the absence of a notation in the service records. I understand. You're trying to say that there's a regulatory interpretation argument to get to the point that was being pressed in the earlier argument. Yes. Now, one of the problems you've got, Mr. Carpenter, is that in promulgating that regulation, they didn't put forth in the Federal Register an explanation of what you're talking about. No, they did not. Therefore, we have to look to the plain... You're sort of saying you think this is implicit somehow. No, well, implicit is one way to put it. The magic language of the regulation. Well, it's based upon the plain language of the regulation. The plain language of this regulation is that it provides a list... Because in addition to what may be in your service records, you can have other things. With all due respect, Your Honor, it does not say in addition to. It says other than service records. It acknowledges, as the VA did in its promulgation of this regulation, that these were underreported or not reported circumstances that were less likely than not to have a service record that confirmed or corroborated that the incident happened. And as you correctly suggested, if we have a situation where it's noted in the service record, we're not in F-5. And we're not in this debate about whether or not the incident did or did not take place. I give you an A for creativity, Mr. Carpenter. You do very well at the Yale Law School. I don't know how you do at Harvard. Your argument is that we don't need to go to the Federal Rules of Evidence. We don't need... In order to get to the... The result you're trying to achieve is to say, in this case, on remand, and in future cases, it will be impermissible for the adjudicator to put into record the absence of a record of assault. When you're adjudicating a case under A-5? Yes, that's what I'm saying. Or excuse me, F-5. Right. That would be correct. So you're saying to get there, we can get there by a creative interpretation of the regulation itself. Yes, in combination with this court's own previous interpretation. Relying on part of the promulgating language to say the secretary recognized that there would likely not be a military record showing the existence of the assault. Yes, frankly, that... That's correct, Your Honor. And this assertion is further substantiated by this court's interpretation of the pertinent statute and regulation at 1154A and at 303A. And in particular in 303A, because what 303A specifically says is that by affirmative showing, you can establish incurrence. And that's what F-5 provides. That corroboration is an affirmative showing that the event took place in service. Because it is corroborating, as clearly contemplated, unquestionably contemplated by the plain language of the regulation, the corroboration of the representation... Assuming there's credible evidence from the complaining veteran that the event occurred. That's correct, Your Honor. It clearly has to be credible. And in this case, what the board did was try to finesse the credibility determination by talking about it in terms of diminishment of the probative value of that evidence. And that is a nice spin, but it is not a proper way to analyze the evidence under the controlling regulation. The controlling regulation here is F-5. And therefore, they were under an obligation to analyze the corroborative statements. I've got one little question, because as you know, Mr. Carpenter, you and Mr. Stoltz weren't originally scheduled to argue these cases, and you're not on the brief. So I assume that you embraced the brief, notwithstanding the fact that you're not arguing on the basis of the brief here today. Certainly, Your Honor. What you're saying, in essence, if we reject the fundamental premise of the three cases, I believe, is the argument that the board impermissibly used the absence of the record against Buchanan. Yes. Even though Buchanan on his face says you can consider the record. So if we were to reject that argument, your fallback argument is that this particular class of evidence is legally insufficient once you properly interpret F-5. That's correct, Your Honor. But help me, my recollection is that we've had some other cases in the veterans area where we've addressed evidentiary issues before the VA. I can't remember the name of the case. I think there was an opinion by then Chief Judge Michel. To that effect, do you remember the case I'm talking about? I'm not.  Now, if I were to conclude, for example, that I didn't think any reasonable person could reach the fact findings that the board did in this case, would I be allowed to reverse as a matter of law the determination? Like suppose that the board decision was just completely on its face, so untenable that as a matter of law, that tiny little bit of evidence cannot overwhelm the mountain on the other side. And I were to say no reasonable person as a matter of law, kind of like in a J-mall thing. Yes, yes. It seems a lot like application of law to facts. It sounds a lot like I'd be stepping into the province of weighing evidence. And I think that is one of the dilemmas that this court has dealt with in whether or not the underlying facts are or are not undisputed. If the underlying facts are undisputed, as we submit they are in this case, that there are two sources of relevant lay evidence which corroborates the testimony of A's why as to what happened here, her former husband and the fellow service member. And those undisputed facts require a result under Buchanan and under the appropriate statute and regulations, then I think this court can apply the law to those undisputed facts. Maybe I misunderstood Judge Moore's question. I thought perhaps she was asking you if we were to conclude that the reliance on the absence of a record was improper. I'm sorry. And then the question becomes whether that was harmless error in the light of the other evidence. My understanding from our cases is that since that's a factual matter, it's not within our jurisdiction to determine that that was harmless error under those circumstances. Again, I think that whole harmless error analysis goes back to whether or not the facts are or are not undisputed. And if you take out of the equation the absence of the service records and that is the only supposed negative evidence or more probative evidence against the corroborative evidence, then I think that you're perfectly capable of finding prejudice because… Didn't the board rely on your client's statements over the course of time and talking about other possible causes of her PTSD? Yes, the board did. But the question then becomes what does that… Isn't that relevant evidence in the mix here? No. Why? Because the issue in F-5 is only corroboration of the stressor. You have to corroborate a stressor that's established. If the stressor isn't established, somebody comes in and says, you know, I don't know if I got raped or not. But her sister and brother say, I think you were raped. And the way you described the event to me, it sounds like a rape. But the complainer says, I don't know if I got raped or not. Well, then you don't care about corroboration because there's no stressor. Your corroborating witnesses can't create the stressor. Absolutely not, Your Honor. But that's not what the evidence in this record shows. The evidence in this… I'm sorry. Just please finish that, Judge Carpenter. Go ahead. Finish your answer. I didn't mean to interrupt. Go ahead. I'm not sure I recall. Oh, I'm sorry. That's all right. Then I'll go forward. So, Mr. Carpenter, you gave us, as I say, you got an A plus at Yale on your creative reading of the regulation to say here's the hook. Here's how you can get this class of evidence out. Okay. Assume, for purposes of argument, that we don't buy that regulatory argument. How do you get the result of excluding this class of evidence in these kind of cases? How do you work it into a law interpretation so we can fairly do it? Well, I think you do it the same way you did it in Buchanan. You go back to the underlying statutory and regulatory structure relative to lay evidence. And that structure says that lay evidence can be the basis to substantiate a claim. Now, in this case, it's very important to remember that the only element that's missing here is incurrence, is whether or not this event did or did not happen in service. And as was suggested in the preceding argument, apparently Congress is considering merging five and three. Frankly, that's the first time I've heard about this. But if, obviously, they do that, then under three, you go to the lay evidence alone, so long as a mental health professional from the VA, a psychiatrist. Okay, but that's not the state of the law now. No, no. So let's not diverge into that. My question for you was, so you seem to be stressing that all you look at is her testimony and if it's corroborated. But that's just not right. It can't be right. And it can't be right because suppose that she says, I was raped by, you know, Mr. X. And her brothers and sisters say, she told us she was raped by Mr. X. And everybody seems credible except it turns out Mr. X was in Canada that day. Fifty people witnessed him there. He's got a flight record that established it. Certainly, the government would be allowed to introduce this contrary evidence that you're saying no? No, no, absolutely. Absolutely, they would be able to. But that's what differentiates this case from your hypothetical. We're not talking about evidence that can be substantiated of other independent events. That he was out of the country. He could not possibly have been involved. What was relied upon by the board was the fact that her service records did not substantiate a suicide. But the suicide that was reported doesn't have to do with the in-service stressor event. The in-service stressor event was the rape. No, but it has to do with whether or not the witness who is doing the corroborating is credible. Because if the witness doing the corroborating says, yep, she told me right after she was raped, and that witness goes on to say a bunch of other stuff which is untrue, and the witness is clearly impeached on that other stuff, isn't the board free to give no or very low credibility weight to the corroboration under the guise of doesn't ring true given all the other lies this person has been caught in? That's not the facts of this case, and I'm not suggesting it is. But as a question of law, then, it becomes a question of whether or not you can use the absence of the notation in a service record to make that impeachment. And that cannot be the law. Well, okay. There were other things that they pointed to that were attempted to impeach, like, for example, the inconsistency in the testimony, how her own account was inconsistent with some of what the witnesses reported, and that her account changed over time. I mean, there were other things that were pointed to which are really the traditional ways in which credibility is assessed. And I think what this court has to look at is whether or not that is consistent with the VA having promulgated this regulation. Did they write a regulation that was going to allow for the creation of the victim as target in order to be able to attack the victim or the victim's corroborators on the basis of inconsistencies? Well, credibility, of course. I mean, you have to assess the credibility of the witness and the corroborators. Don't you agree? Certainly you do, but you cannot use the absence of notations in service records to do that. But what about all the other stuff, the inconsistent statements? Can't that be used to undermine the credibility of these witnesses and thereby reject their testimony? Well, the answer is yes, isn't it? The answer is yes. The answer is yes, but the problem with that answer is, is that that- You don't like it. Well, certainly I don't like it. That's the problem. No question. I will stipulate I do not like that. But what I don't like about it is, is that it distorts and converts this system into an adversarial system. And this is not supposed to be an adversarial system. This victim is not supposed to be placed on trial about her representation about an acknowledged event that goes underreported or unreported in the military. And that is the rub here. By allowing for such impeachment to use- They get away credibility, Mr. Carpenter, whether you like it or not. They get away credibility. But against existing evidence, not against service records that do not exist. Okay. I think we're out of time. We'll give you a minute for rebuttal. May it please the court. The post-traumatic stress disorder regulations do provide the ability to weigh whether supporting evidence is ultimately credible. In this particular case, the evidence or the absence of evidence in the record that the board was considering does not go to the question of whether she was sexually assaulted. Rather, they go to other conflicting accounts. For example, a declaration was submitted in which supposedly the claimant had attempted suicide and had a psychiatric evaluation on base. However, there was no record of those, undermining the credibility of that statement. One of the claimants' declarants claimed she regularly had poor hygiene and was unable to take care of herself. However, service records show she had a smiling demure and outstanding performance. Well, I don't think anybody's suggesting that stuff that's in the service records can't be used, nor is anybody suggesting that if there were a statement that something was, in fact, reported and it's not in the record, that that isn't significant. The question is when there's no record of the sexual assault, can we say that that is evidence that it didn't happen? Your Honor, I don't think that's as pertinent to this particular case because what the court's weighing in this A-Y, in contrast to the previous case, is focused upon and its use of the absence of evidence in the service records is focused upon other matters. That's what we don't know. We do know that the board in this agency referred to the absence of any notation in the record of the assault. So that data point was considered by both the BVA and the CABC, right? In this particular case, they noted? Yeah, but you can't deny. But in going through under the regulation, I mean, one thing I actually would agree with Mr. Carpenter is the actual language of the regulation where it says, you know, if a post-traumatic stress disorder is based on in-service personal assault, evidence from sources other than the veteran's service record may corroborate. Well, it mentions the veteran's service record, so the first question the board probably examined is, well, is there anything in the veteran's service record? No. And the board needs to make a notation of it. I mean, see, what we don't know, what I don't know, is whether the fact finder here considers the absence of any notation in the records of the assault to be a very, very significant piece of evidence or whether it's just a piece of evidence. So I don't know how this case would have been decided at the BVA if the absence of a notation in the record of the assault was not considered, if it were just taken out of the mix. To be sure, there's more in the mix in this case than there was in the case we heard first. In terms of facts that might be supportive of the secretary's point of view. But what this whole discussion has been aimed at is whether it's sort of like the poison fruit, you know what I mean? So we don't know whether this particular class of evidence, that is to say, no notation in the record of the assault, whether that's poisonous. But we do know that if it were totally dispositive, then you'd have a problem under Buchanan. There's no indication in this case, especially given the amount of evidence that the board was considering. There's no indication that it was not. But there's no indication that it was, that's true. There's no indication that it was not. But I mean, when you go through pages and pages of analysis of multiple factors and you simply fulfill your duty of noting whether or not there is any evidence in the record, that would not be an error. I mean, quite simply, the board has to... Well, did you mention that they didn't rely on the absence of records here as part of the mix? No, I mean, they note that there's, you're correct. I mean, they don't note that we didn't notice that there was a reliance on it. But they don't state, they don't compare it, they don't place it up against any of the other evidence. When they're talking about the probative value of the evidence, they're talking about other factors rather than merely the notation or the lack of a notation of sexual assault. I mean, they do note it, but they note it separately as opposed to weighing, when they're weighing the probative value of the other evidence and the lay statements that were submitted. And they're weighing the lay statements against different evidence, not merely the notation of whether or not there was a sexual assault in this case. How many of these cases are sexual assault cases pending? Do you have any idea? I know of one other that was argued on Tuesday. I don't know of any others right now, no. You don't have any knowledge within the agency as to just how often, how many of these cases come up? You're reading the newspapers today, it sort of sounds like this is a pervasive problem. No, I mean, they do come up from viewing the Veterans' Appeals cases. I would, you know, I would be loathe to be bound to an estimate. You know, I'd say four or five a year at least, maybe upwards of ten in some cases. But what I've seen from the Veterans, you know, from the Veterans' Courts opinions may be only a subset of those cases. Can I ask a question that goes into the jurisprudence of the CAVC judge? The presiding judge mentioned in the first argument the Buczynski case, 24 Vet Ab 221. And in that case, it dealt with a fact situation where there was a failure of a doctor to make a particular type of diagnosis. And the absence of that diagnosis, the absence of a notation in the record was being held against the veteran. And the BVA, pardon me, the CAVC noted that this is not typically the kind of observation that the doctor in those circumstances would have been making. And they went on to say, when assessing a claim, the board may not consider the absence of evidence as substantive evidence, substantive negative evidence, citing McClendon against Nicholson, and also citing a comment by our then chief judge in the Forshay case, a comment made in a dissent, but the comment was not pertinent to the difference on the dissent between the majority and the dissent. So we have a body of law at the CAVC that says, in circumstances quite closely related to this, where a particular class of a record was not likely to have been created in the first place, that you can't take the absence of that record to count it. Now, if that body of law is being, and there was a CF reference to 803 in that particular opinion, so what are we to do with a body of law that the CAVC is enforcing in other situations which they didn't enforce in this case? And is this, are we permitted to look at this body of CAVC law and say, that law makes sense? And we think they ought to apply it uniformly where it's apt. My view would be that the court should defer to the veteran's ultimate, or the VA's interpretation of what sort of evidence is or is not required by virtue of its particular statutes, or by virtue of its particular regulations. The VA has chosen not to exclude this class of evidence. They could. Have they been asked? Yes. I mean, that's in the promulgation of the regulation. It was raised that, you know, that basically... Let me be sure. What I'm asking is whether or not there's been a case around the CAVC where someone came up and made the argument that has come from the bench here today, that is to say that this absence of a notation of an assault on the record is legally insufficient evidence, cannot be considered. I'm not aware of a case... See, the issue was presented in Buszynski. In a different... In a different setting. But the notion that, well, can you hold against me the absence of a record where ordinarily the doctor wouldn't be making that record? And the CAVC said, no, you can't do that. So I don't know of a case where... I mean, certainly this argument that we're talking about here wasn't specifically made below. But you exclude the evidence. And, you know, I mean, I would not say, you know, in just merely... I mean, in this case, merely noting the absence of a record is ultimately dispositive when you're not weighing it against other evidence. So I wouldn't say that would control this case. In the case of AZ, they are weighing it. But again, you know, as we've noted, the evidence is not just simply the notation or lack of a notation. So under F-5, you have a claim of an in-service dresser. And one form of corroboration can be a layperson, roommate, especially his former roommate, all these things, right? Fellow service member. And that could corroborate, yes. Right. Now, in this case, you provided four different statements of people who otherwise fit within the description in F-5, correct? Yes. Okay. One of the problems I have with the Board's opinion is it says the lay statements have diminished probative value. Lumps them all together, okay? One of the lay statements talks about the hospitalization. And a large portion of the Board's, what it appears to me to be, the Board and the Veterans Courts' reliance on why the lay statements, plural, have low probative value is because of the allegation that she committed to, was taken to an emergency room, received repeated treatment, and yet there's no medical evidence of that. And your point is that medical evidence isn't medical. That's not an absence of service records regarding reporting. That's an absence of service records regarding something else. And that it was fair for the Board then to reduce the credibility or probative value of the lay statement, which makes that claim and is then contradicted by the absence of those records, correct? Yes. Okay. So what about the other lay statement? That make no such claims, and I can find no best basis in the opinion for addressing their lack of credibility on any other ground. Let me give you an example. The one appearing on page 122 of the appendix. This is a very thoughtfully well-written lay statement by a fellow service member and roommate who said, basically immediately upon coming back after being raped, she told me she was raped. The other one in blue talks about her behavioral changes. It talks in detail about the incident that was conveyed to her. This particular one, it talks about how she considered suicide, but it never says committed or attempted to commit or was taken to a hospital. One of my problems is, is it correct under F5 for the Board to lump them all together, find a flaw in one of them, and then throw them all out the window as a result? What is the basis upon which the Board rejected this particular lay statement as lacking corroborative value? I wouldn't say it's dismissing that particular lay opinion. How many does she have to have? F5 just says corroboration, right? A single person can corroborate you. I can corroborate that you're standing right here, even if they don't and aren't willing to, or even if they talk about some inconsistent account. Well, did he have glasses? Did he not have glasses? I don't remember. I alone can corroborate you. The fact that she introduced additional corroborative evidence that turns out to have some flaws in it, why does that provide a basis for throwing the baby in the bathwater out together? Well, because it's weighed against the other evidence of record. It's not simply just you submitted one statement which helps corroborate your account. One statement that does corroborate your account. Then you have three other statements for which the Board says has low probative value because of concerns about the credibility of those other statements given that there are unrelated sections of those statements, i.e., the emergency room visits and stuff, which have nothing to do, not the result of the race. So those other statements lack credibility in some form not related to this statement or to what's claimed in this statement. All the statements are consistent with regard to her claim of rape. That's what this statement stands for. What is wrong with this statement? Is there any way in which the Board addressed this statement in particular or found it to have low probative value or lack credibility? Well, I would say in its other findings with regards to the other evidence of the record. I mean, I don't think the Board specifically does, the Board does not specifically address that or specifically speak to that statement. And isn't it true that to the extent that the Board finds flaws in the, quote, lay witnesses for the emergency room visit due to the alleged suicide, none of that can in any way detract from the corroborative value of this statement because this statement doesn't allege any of those things. So to the extent that the Board finds that the statement which does make those allegations lacks credibility on those points, that can't infect this statement because it doesn't make these points. No, I mean, I would say it has some cooperative value. The problem is, ultimately... Some cooperative value. Suppose she didn't submit any of the other statements. The problem is... Then it still would be outweighed by the other evidence which we see the Board weighing, which is the conflicting accounts which the claimant herself has given of both her sexual assault and her stressor. And the absence of a service record of the sexual assault. They can weigh that against this statement, right? Well, you know, I wouldn't say in this case the Board weighed that very heavily. I think the majority... Okay, but we'll leave that aside. We've addressed that fully. If this particular piece of corroboration is unimpeachable, we assume that the BVA does its job correctly and it is totally corroborative, then the only basis on which it could be rejected is if you believe that there was no in-service stressor. If you don't believe your client... I mean, her client happened, then you throw the corroboration out because there's nothing to corroborate. And so possibly the only evidence that could have been used to get rid of this particular affidavit would be to say, well, we don't think there was a stressor and there was no in-service record to show the stressor. And that's what they also do in their opinion. They talk about the conflicting accounts. They talk about a number of other factors. I want you to go through. What are the conflicting accounts? Is it a one-year period? And the fact that she later reported it, those are what you deem to be conflicting accounts? No, no. It's when she first... Well, there are multiple conflicting accounts which they take into account. The first they take into account is they take into account that her allegation of what the stressor was has changed over time. So she had initially come in to the VA and said that she had a stressor that was due to mental stress at West Point. And then she came in several months later... Well, mental stress at West Point is inconsistent with the fact that she was mentally stressed after she was raped. But she wasn't calling it... She wasn't revealing the rape. She was not revealing the rape, but she also was not revealing the... She wasn't discussing at all in terms of sort of a subsidiary effect of her time that was not at West Point. So basically the inconsistency boils down to a failure to report the rape at an earlier time. No, not just that. She's calling it something else. She then says that the stressor is because she has a stressor. It was her knee. She had knee issues and she couldn't get out of the service during basic training, and so that was actually her stressor. And finally, she ultimately says, well, actually it was revealed to me that this is all due to a sexual assault, which seems to indicate that her previous statements, she was not thinking about the sexual assault stressor. She was not raising the sexual assault stressor in those previous instances. And when she has described the sexual assault stressor... I think we're over time here, Mr. Mager. I apologize, Your Honor. Mr. Carpenter, you have a minute. Actually, Your Honor, I'm not going to use it unless there's any questions. I guess there are no questions. Thank you. Thank you very much. We would like to have supplemental briefing in both cases on this question of whether the VA can properly rely on the absence of service records showing the sexual assault. And I'd suggest simultaneous briefs, say 10 days from now, five pages each. So that would be, in both cases, we have... We should focus on the body of law to see if we still have... Yeah, and in connection with that, you should focus on the body of law at the Veterans Court as well as general evidence law. So that would be four briefs, five pages each, 10 days. We'll issue an order.